**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3479
_____

UNITED STATES OF AMERICA

v.

MARK O. WHITE,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-12-cr-00322)
District Judge: John E. Jones III

_____

Submitted Under Third Circuit LAR 34.1(a)
June 14, 2019

Before: HARDIMAN, KRAUSE, and PORTER, *Circuit Judges*

(Opinion filed: June 19, 2019)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Mark O. White appeals the District Court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence, arguing that his sentence was unconstitutional because, during plea bargaining, the Government leveraged the threat of a statutory sentencing enhancement that was subsequently abrogated-in-part as unconstitutional. *See Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). Because White waived his right to bring such a collateral challenge to his sentence when he entered his plea, and because enforcing that waiver does not "work a miscarriage of justice," *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001), we will affirm.

## I. Background

White was caught with several guns in his apartment and pleaded guilty to unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). During plea negotiations, the Government purportedly "wielded the threat of the Armed Career Criminal [Act] ('ACCA') enhancement," App. 52, which would have subjected White upon conviction to a mandatory minimum sentence of fifteen years, *see* 18 U.S.C. § 924(e). His fear of that prospect ostensibly impelled him to enter into a plea agreement with the Government in which both parties agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the ten-year statutory maximum for a § 922(g) conviction was appropriate in his case, *see* 18 U.S.C. § 924(a)(2), and the Government agreed to recommend that sentence to the District Court, which imposed it.

Approximately two years later, the Supreme Court struck down the ACCA in part, concluding that the statute's residual clause in § 924(e)(2)(B)(ii) violated the Due Process

2

Clause because it was too vague to provide fair notice of the conduct that it punished. *Johnson*, 135 S. Ct. at 2557–60. That change in law prompted White to file a motion to vacate his sentence under 28 U.S.C. § 2255, asserting that the Government's use of the ACCA as a bargaining chip to secure his guilty plea rendered his sentence unconstitutional. The District Court denied the motion, concluding that *Johnson* did not affect his sentence because, although the ACCA may have played a role in plea negotiations, he was not actually sentenced under the ACCA. This appeal followed.

## II. Discussion[1]

We will not disturb the District Court's denial of relief because, as a condition of White's plea agreement, he waived his right to "collateral review, including . . . a motion to vacate judgment under Title 28, United States Code, Section 2255," App. 32, and the record here demonstrates that waiver was knowing, voluntary, and enforceable.

A waiver of the right to collateral review is valid if it is "entered into knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice. *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008), *abrogated on other grounds by Garza v. Idaho*, 139 S. Ct. 738 (2019). We have declined "to earmark specific situations" that constitute a "miscarriage of justice" and have instead endorsed several factors to consider on a case-by-case basis, including the "clarity" of the alleged "error." *Khattak*, 273 F.3d at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)).

---

[1] The District Court exercised jurisdiction pursuant to 28 U.S.C. § 2255. Having granted a certificate of appealability, we have jurisdiction pursuant to 28 U.S.C. § 2253(a) and (c).

Here, White does not argue that he entered into the waiver unknowingly or involuntarily and focuses his briefing instead on his contention that its enforcement would work a miscarriage of justice.[2] That argument is unavailing because the alleged "error"—the Government's leveraging of the then-valid ACCA sentencing enhancement as a bargaining chip in plea negotiations—lacks the sort of "clarity," *Khattak*, 273 F.3d at 563 (citation omitted), that attends a miscarriage of justice. Put differently, even if White had not knowingly and voluntarily agreed to forgo a collateral challenge to his sentence, that challenge would be dubious on the merits, and we will not set aside his waiver to consider a claim for relief that is both novel and suspect. *See id.* at 562 ("A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues . . . ." (citation omitted)); *see also United States v. Cabrera-Rivera*, 893 F.3d 14, 30 (1st Cir. 2018) (acknowledging similarity between miscarriage-of-justice and plain-error standards).

Generally, for a defendant who has not waived his direct appeal or collateral review rights, "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *United States v. Lockett*, 406 F.3d 207, 213 (3d Cir. 2005) (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970)). There is "only a

---

[2] White fleetingly states in his brief that "his guilty plea was not knowing or adequately informed because it was premised on the applicability of the . . . [now partially abrogated] ACCA." Appellant's Reply Br. 1. But he does not explain that bald assertion, and his brief goes on to argue only that the miscarriage-of-justice exception applies.

4

limited set of grounds . . . available for a defendant to challenge a conviction or sentence based on a guilty plea." *United States v. Peppers*, 899 F.3d 211, 225 (3d Cir. 2018). For instance, Congress may create statutory mechanisms for defendants who plead guilty to later challenge a conviction or seek a sentence reduction in light of new legal developments. *See, e.g.*, 18 U.S.C. § 3582(c)(2) (authorizing courts to reduce a sentence that was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission"); *see also Hughes v. United States*, 138 S. Ct. 1765, 1773, 1775 (2018). As another example, a guilty plea will not preclude a defendant from collaterally attacking her conviction where, because of a change in law, it becomes clear that the defendant did not receive "real notice of the true nature of the charge against him" before pleading guilty. *Bousley v. United States*, 523 U.S. 614, 618–19 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (allowing collateral challenge where defendant pleaded guilty to violating a statute that was subsequently interpreted narrowly by the Supreme Court, such that the defendant allegedly "[mis]understood the essential elements of the crime with which he was charged" when he pleaded guilty). In a similar vein, we recently held that a defendant who—unlike White—was actually sentenced under the ACCA before *Johnson* was decided is not precluded by a guilty plea from collaterally attacking his sentence. *See Peppers*, 899 F.3d at 225–26. As we explained, "[p]arties may not stipulate to an unlawful sentence in a plea agreement." *Id.* at 225.

But none of those exceptional circumstances pertain here. The first two are inapplicable and, as to the third, White did not stipulate to an unlawful sentence. Just the opposite: White's original indictment charged him with a violation of § 924(e), but the

5

unlawful ACCA enhancement was specifically bargained out of his guilty plea. We have never recognized the availability of collateral review in a case like this, i.e., where a law later declared unconstitutional merely contributed to the Government's negotiating leverage in plea bargaining. In fact, the notion of such relief is in sharp tension with our precedent, under which "[t]he possibility of a favorable change in the law occurring after a plea agreement" is ordinarily viewed as "merely one of the risks that accompanies a guilty plea." *Lockett*, 406 F.3d at 214; *see also Brady*, 397 U.S. at 757 ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action."). Thus, to the extent there is even the possibility that White would be entitled to relief if he had not waived his right to collateral review, that possibility is faint at best. Accordingly, there is no miscarriage of justice in enforcing White's waiver, *see Khattak*, 273 F.3d at 562, and we will do so.

## III.    Conclusion

For the aforementioned reasons, we will affirm the order of the District Court.

6