FRANK THOMAS

*v.*

BOBBY J. LEVERETTE, *Superintendent,*

*West Virginia Penitentiary*

*as successor to*

*Arthur L. McKenzie, etc.*

(No. 13903)

Decided December 13, 1977.

Rehearing Denied February 6, 1978.

*James B. McIntyre* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Gregory W. Bailey,* Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

This is an appeal from the denial of a writ of habeas corpus by the Circuit Court of Mercer County. Petitioner contends the court erred in not finding that his guilty plea to second degree murder was coerced by threats of the prosecuting attorney and made while he was under the influence of drugs. He also maintains his plea was accepted in contravention of the requirements of *Call v. McKenzie,* ____ W.Va. ____, 220 S.E.2d 665 (1975), and *McCarthy v. United States,* 394 U.S. 459, 22 L. Ed. 2d 418, 89 S.Ct. 1166 (1969).

Petitioner, Frank Thomas, entered a guilty plea to second degree murder on July 2, 1975. Subsequently, he filed a writ of habeas corpus before the Circuit Court of Mercer County, which appointed counsel for Thomas and set the matter for hearing for May 6, 1976.

At the evidentiary hearing, Thomas claimed his guilty plea had been taken at a time when he was under the influence of drugs. From the entire record, the trial court was correct in its holding that there was no credible evidence to support this contention.

Thomas also contended that his guilty plea had been coerced by the prosecuting attorney who had visited him in jail approximately six weeks prior to the entry of the guilty plea. It is not disputed that the prosecutor visited petitioner and that at the time of the visit, neither of Thomas' two court-appointed attorneys was present, nor had either been notified of the proposed visit.

Thomas testified that initially the jail house conversation with the prosecuting attorney centered on whether Thomas was planning an escape from jail. Then the conversation shifted to a discussion of his pending murder charge, and the prosecutor indicated he would let him plead guilty to second degree murder and if he did not do so, he would "... see to it that I get life."

The prosecutor's assistant and his investigator were also present when this meeting took place. At the hearing, both the prosecutor and his investigator denied that any discussion of a plea bargain had taken place. The assistant prosecutor had no recollection of the details of the conversation. The lower court concluded that Thomas' plea had not been coerced.

In *State v. Britton*, ___ W.Va. ___, 203 S.E.2d 462 (1974), this Court discussed at length the impropriety of a prosecuting attorney counseling with a criminal defendant in the absence of the defendant's own counsel as to aspects of the pending prosecution. Such conduct was held not only a breach of the Professional Canons of Ethics, but also a violation of the due process requirements of Article III, Section 14 of the West Virginia Constitution. *Britton* applied the doctrine of harmless constitutional error and required the State to show beyond a reasonable doubt that the prosecutor's conversation was harmless. 203 S.E.2d at 467. *See State v. Boyd*, ___ W. Va. ___, 233 S.E.2d 710, 717-718 (1977). From the record it does not appear that the lower court considered the *Britton* rule in weighing the evidence on this point.

As a part of this point, Thomas claims the trial court erred in not granting him a continuance so that three individuals, who were incarcerated in the jail at the time the conversation took place and who allegedly overheard it, could give testimony. It appears at the hearing that Thomas' counsel advised the court he had learned the names of the three witnesses the day before the hearing, when Thomas was brought into Mercer County from the Penitentiary at Moundsville.

Counsel asked the court, after it had heard the evidence from Thomas and the State, to continue the hearing to another date so that he might have an opportunity to subpoena two of the witnesses who were incarcerated at the Penitentiary. The Court declined to do this and concluded the hearing.

Because of the constitutional dimensions of the *Britton*, rule, we believe the trial court should have accorded

Thomas' counsel a reasonable opportunity to obtain the testimony of the absent witnesses.[1]

A more fundamental problem arises in attempting to determine the trial court's finding with regard to whether the guilty plea was understandingly made, absent any question of coercion. *State ex rel. Clancy v. Coiner*, 154 W. Va. 857, 179 S.E.2d 726, 733 (1971), recognized that even though a guilty plea is tendered by the defendant in open court, and at that time he states it is voluntarily made, inquiry as to the fact of its voluntariness is not closed forever.

This Court in *Call v. McKenzie, supra,* suggested specific inquiries that should be made of the defendant at the time his guilty plea is taken in order to forestall future attack on the guilty plea by way of a habeas corpus proceeding. *Call* Acknowledged that the failure of the trial court to follow each suggested inquiry would not invalidate the guilty plea. 220 S.E.2d at 671. It did

---

[1] It is apparent that procedural difficulties do exist where the defendant is incarcerated in one county and the habeas corpus proceeding is pending in another county. The Legislature, in enacting W.Va. Code, 53-4A-1, *et seq.*, has attempted to provide considerable flexibility to counsel and trial courts in handling a writ of habeas corpus. Section 3(b) permits the court in which the writ is filed to make it returnable in that court, or the court where petitioner is incarcerated, or the court where he was convicted and sentenced. Section 7 authorizes the court to hear the matter without jury and to provide for hearing or evidence to be taken in other counties of the State. Evidentiary depositions are authorized. We believe that a fair reading of the entire Act demonstrates that there is no requirement that the petitioner be present at all stages of the habeas corpus hearing. A similar construction has been placed on the federal habeas corpus statute. *Sanders v. United States*, 373 U.S. 1, 21, 10 L. Ed. 2d 148, 83 S.Ct. 1068 (1963). We also agree with *Sanders'* admonition that:

"This does not mean that a prisoner can be prevented from testifying in support of a substantial claim where his testimony would be material. However, we think it clear that the sentencing court has discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing." [373 U.S. at 21]

Certainly, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973), demonstrates that where the petition is completely without substance the court is not required to hold any hearing.

require the court to determine ". . . that the defendant understands the nature and meaning of the criminal charge made against him in the indictment." 220 S.E.2d at 670.

The United States Supreme Court has consistently stated that due process procedures must be observed in the taking of a guilty plea. It has also said that among such requirements of due process is that the defendant must understand the nature of the charge against him. *Smith v. O'Grady*, 312 U.S. 329, 85 L. Ed. 859, 61 S. Ct. 572 (1941). In *McCarthy v. United States, supra*, the Court elaborated on this point by stating that the elements of the crime were required to be explained to the defendant. While *McCarthy* involved in a habeas corpus attack on a guilty plea to a federal criminal charge, *Boykin v. Alabama*, 395 U.S. 328, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), held that guilty pleas entered in state criminal proceedings are subject to the federal due process standards. We specifically hold that these rights are guaranteed under the Due Process Clause of the West Virginia Constitution, Article III, Section 10.[2]

In *Henderson v. Morgan*, 426 U.S. 637, 49 L. Ed. 2d 108, 96 S.Ct. 2253 (1976), the Court dealt specifically with the failure of a state court to adequately inform a defendant of the element of intent on a plea to second degree murder. It concluded that the plea was constitutionally defective, as the concept of voluntariness with regard to a plea of guilty embodies two aspects:

> "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, see, e.g., Johnson v. Zerbst, 304 US 458, 464-465, 82 L Ed 1461, 58 S Ct 1019, 146 ALR 357, or because he has such an incomplete understanding of the

---

[2] It is clear that the due process procedures surrounding the taking of a guilty plea are applicable whether the guilty plea is entered with or without a prior plea bargaining agreement. *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971); *Call v. McKenzie*, ___ W. Va. ___, 220 S.E.2d 665 (1975); *State ex rel. Clancy v. Coiner*, 154 W. Va. 857, 179 S.E.2d 726 (1971).

charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense. Smith v. O'Grady, 312 US 329, 85 L Ed 859, 61 S Ct 572." [426 U.S. at 645, n. 13]

The Circuit Court of Mercer County at the habeas corpus hearing had before it the transcript taken at the time Thomas' guilty plea was entered. This guilty plea transcript does not disclose that Thomas was ever informed that intent is a necessary element of the crime of second degree murder. Moreover, the only dialogue Thomas had with the court, other than simple responses of "yes" to direct questions from the court, appeared to indicate he did not intend to commit the crime.[3]

In the absence of factual findings by the trial court at the habeas corpus hearing, we cannot determine what consideration was given to this point.[4] In *Henderson*, the Supreme Court had the benefit of a specific finding that the element of intent had not been disclosed to the de-

---

[3] The record does not contain any details of the crime except that the defendant, a black man, shot another black man. Defendant's only dialogue with the court at the time the guilty plea was taken is as follows:

"I want it to be known like I don't commit no crime against the white society, the crime against black I mean, and I am very sorry for the incident that happened, because the fact is that the black warriors there are, we need all our black warriors in this revolution to overcome the system, and I am very sorry, not for the white people but for the black people."

The situation is different from that of *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S.Ct. 160 (1970). There, despite the defendant's assertions of innocence at the time of the guilty plea, the record amply disclosed the circumstances surrounding the crime and the defendant's involvement in it. Here, we have no such factual information.

[4] W.Va. Code, 53-4A-7, provides that in a habeas corpus proceeding" ... the court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided. ...."

fendant. We are not in a position to determine this question of fact and, therefore, reverse the judgment of the Circuit Court of Mercer County and remand the case for such factual determination in light of the principles set out in this opinion.

*Reversed and remanded.*